May it please the court, William Piper appearing on behalf of the appellant Terry Tilley. In this case the district court in its second dismissal of this case committed several legal errors. I think what I'd like to start with first is what I believe is the most important passage of the opinion. It's right at the end, page ID number 1476 to 1477 where in the court states plaintiff further claims the defendant blamed him for not contacting Mr. Bartholomew during his time in the hospital and shortly thereafter and that this was a partial cause of his termination. While plaintiff is correct that defendant cited his failure to communicate as a basis for his termination, plaintiff has offered no legal argument such communication failure is protected activity under the FMLA. The appellee in its brief sentence spent a substantial amount of time arguing that the alleged failure to contact the defendant was not a reason for the termination and other reasons were but the court made factual finding as I think makes sense from the record that it comes right from the termination letter that it was a reason for termination. So I'd just like to get beyond that first and I would also submit as direct evidence of the termination. But I believe where the court erred is in how it framed it. I think it framed it in a rather odd way to say that there's no legal arguments that such a communication failure is a protected activity under the FMLA is an erroneous way of established or framing the issue. What we are arguing is that the protected activity was the request for FMLA which occurred in early August of 2011 which I believe the Sixth Circuit in its first opinion indicated had been done. The court erred as well by saying that Mr. Tilly did not actually request FMLA until August 17th which is when the certification paperwork were submitted. Of course the FMLA request was made and as a matter of fact the Road Commission granted the FMLA request on I believe it was the 9th of August saying your request is granted but we need the certification. So the court is wrong on that as well. What about this way of thinking about the case? It's true that these three last projects, things to finally get done and this was his last shot. I think you would agree he had a problem with getting things done so he's kind of given this last chance and I guess one's due the 28th, one's due the 29th and one's due August 1st. All three are supposed to get finished or else that's it. He's going to be fired. It's true the last one is due on a day that he's sick so I get the point that it's perhaps unfair to hold that one against him but maybe that one's irrelevant. In other words what the employer was saying is enough is enough. You're not getting things done on time. This is your last chance. Please get these three things which we've previously asked you to get done before done on these dates and he doesn't get them done on these dates and the most conspicuous is the one on the 28th where it's still incomplete again and so one could almost think about this case as who cares about the assignment that was due the 29th or the one on the 1st when he was sick because by the time the 28th was done it was more of the same and so why can't one think about the case that way? Well that is factually inaccurate. He did get the reprimands in before the 28th. He did get them in. The defendant I believe... His whole problem was not completing things so he turned something in on the 28th but it's not complete so that it's the same problem. I respectfully disagree your honor. Where in the record it shows that he was asked to do ABC and the record shows there's agreement that ABC were done. Yeah I cited in my brief that Mr. Bartholomew admitted that he submitted the reprimands by the 28th. It was but before that they were incomplete. No and that's where I respectfully disagree with the assertion. What the reprimand in the appellant basically pointed out in its brief that the Fitzsimmons thing wasn't done properly. Now there's nothing, first of all the district court didn't rule that it wasn't done improperly so that's one hurdle that would need to occur. Secondly, I understand. Secondly, however, he did get that reprimand in and it had the information in it that was requested. The information in it that he supplied was that the key was not in, excuse me, was in the ignition when it should have been withdrawn. He had that in that reprimand. What that reprimand also included, however, was some additional stuff as I would suggest purely informational that the disconnect switches has been a problem and that was what the other issues dealt with, the other four individuals. But the information that he was supposed to have regarding Mr. Fitzsimmons was actually in that reprimand that he submitted which was that the disconnect. Your position on the one on the 28th was he got it in on the right day and it was complete. We'll see what happens on the other side. What about the 29th where clearly the request was to give it to him not to somebody else and so of course that doesn't get where it's supposed to be until August 3rd or so. Why isn't that, again you understand the point. Yeah, I understand the point you're making but my point on that was he gave it to an agent of the defendant. He was a, I can't remember the exact title, but a manager, area manager or something to that effect. That person simply forgot to provide it to Mr. Bartholomew. So I would believe it was substantially, he asked the area manager to give it to Mr. Bartholomew. The guy forgot and it wasn't submitted until after the deadline. But I'm just making the point, wasn't your client asked by Bartholomew to give him the work for the 29th to Bartholomew? I don't recall specifically on the record. I believe it probably was that request was made. However, I believe giving it to the guy, to the area manager who, you know, was one of the subordinates, he should have delivered. I believe it was substantially done. I'm not getting the precise legal terminology, but substantially, you know, there's a contract term, substantial performance. I believe that was done when he gave it to the area manager and the area manager simply forgot to give it to Mr. Bartholomew. Your claim is pretextual. That's what your claim is. First of all, what I'm... He didn't want any such thing as failure to complete his work. Yes, what I believe is, is he did comply and, regarding the second point, substantially comply with the contract. Beyond that, which is the first point I was attempting to make, in the district court's opinion, he indicated that the alleged failure to communicate regarding the pager was a reason for termination. On the FMLA, you have to show there's a call to connection. It's in the record, so I don't think I have to even dispute the other points. They have indicated there's an illegal reason in the part of the problem here. We had the application of the incorrect standard below. Your argument is that this is a direct evidence case. Absolutely. And what the district court did was apply the burden-shifting standards of McDonnell Douglas. And tell us how that would change the outcome if the proper test had been applied. Yeah, if there's direct evidence, you don't even go into the pretext analysis, which is what Judge Sutton started with when he began asking the questions. Because the other issues... You don't get too many claimants on your side that are insisting, don't use McDonnell Douglas. They're insisting on direct evidence. But keep going. I'm all ears. I have an argument for the pretext issue, which is what I... Go to the direct evidence. Yes, the direct evidence is right in the opinion. As I Well, plaintiff is correct. The defendant cited his failure to communicate as a basis for his termination. The court made a factual finding, which, I mean, it's not de novo review. He made a factual finding that that was one of the reasons for the termination, which is reasonably based on the record, because that was put in the termination document as a reason for termination. So I'm getting your point. It's direct evidence of FMLA discrimination to contact someone during FMLA leave. Okay, well, that's the point I was attempting to make at first. The court, I believe improperly framed the issue. I'm not arguing that, as the court stated, I think rather oddly, communication failure is a protected activity under the FMLA. What I'm arguing is that the protected activity was his request for a leave under the FMLA, which the Sixth Circuit's previous opinion said, yes, he made, and terminating someone for making a request under the FMLA is illegal. That's what the interference is. I'm not arguing that someone, by asking Mr. Tilly while he was on leave to communicate regarding a pager, is interference in and of itself. I wouldn't bring a lawsuit as a result. Am I understanding it correctly? Your argument is that punishment for not responding is interference. Correct. Which is what the letter says. Correct. Mr. Stone cited cases in his brief, I think to try to distinguish my argument, that said, well, it's not interference for an employer to contact someone and say, hey, can you help out, Joe? Your replacement answered a few questions. Do you agree with that principle? I agree with that principle. However, this is not that case. This case involves termination for not responding to the pager request. It doesn't involve a simple, you know, we're asking you to respond to the pager request, and that's interference. This is a lot more serious. This is termination for alleged failure to respond to the pager request. And I would also argue that there's a question of fact regarding this alleged failure to respond, because I believe he did respond. The termination letter, in fact, says you were on the duty rotation the week of August 1st and shared the pager was located in your KV, Kalamazoo County Road Commission truck, and it was not found. I don't know how else Mr. Tilley could possibly communicate beyond that, other than... You admit that the pager was missing some way? Yeah, the pager was missing, so... You had a right to call him? Yeah, I have no problem with that. I'm not saying that's the interference. The interference is terminating him for allegedly not responding to the pager request. Ask him where it is. What are they allowed to do if he won't respond? Well, first of all, I don't think you could What are they allowed to do? Can they discipline him? You would say the same thing. I would say it would be a violation to discipline, but communication is not a problem. If you understand my perspective on what you're saying, is you're saying, oh, you can contact him. You can ask him questions about matters that they feel are urgent. You just have no recourse if they don't respond. That's your position. Well, I'm not saying that's the position. If there's an outright insubordination, maybe there's a recourse, and I don't think that's what the case was here. The call was made while Mr. Tilly was in the hospital. The record reflects that he shared that, and that's in the termination letter, that the pager was in the truck. What else is Mr. Tilly supposed to do beyond going back into work and looking for the pager if he says it's in the truck and it's not there? In order for him to determine what happened to the pager, he gave his best explanation. Just to make sure I understand what you mean by your direct evidence theory. Yeah. So don't say it in terms of what the district court did. Just say it in terms of what you think the law and the facts in this case require. The direct evidence is that they terminated because of the call about the pager, or what's the direct evidence? They terminated him, and the district court said it, and it's in the termination letter. To have a direct evidence case, what that means is there's no other way to look at the facts other than as evidence of discrimination under the FMLA. Since you're acknowledging they can, one, reach out, that's not a problem, and two, in some settings, discipline. All you have is a fact dispute about whether this is one of these settings. It seems to me takes it outside of direct evidence. That's what I'm struggling with. It makes it a McDonald-Dodson. It is direct evidence because the court stated that he cited fair to communicate as a basis for termination. We're on summary judgment. Is there a dispute of material fact? Yes, there is a dispute of fact. If there is a dispute of material fact, then the finder of fact, a jury, must make that determination. At your position. That is, and the reason is because the letter itself says that he shared the pagers located in the KCRC truck, and it was not found. What else is he supposed to do? The only other thing he could possibly do was to go into work, which would clearly be a violation of his leaving of the FMLA, and start looking around for the pager. He didn't communicate that to them, did he? He just didn't. He indicated that he thought it was in the truck, and beyond that, there's no other information that would have helped them other than going back into work. But he communicated after that, and I know I'm beyond my time, but there was a call, and it says, hey, Travis, this is Terry, blah, blah, blah, blah, blah. Travis said, that wasn't made to my phone, it was made to the Teamsters line, but why would you say, hey, Travis? And the phone records confirm the call was made to Travis's line. So there could have been ongoing back and forth at this point. The defendant, I think improperly, in violation of the facts, are basically claiming he didn't communicate, and that's a factual issue. Thank you. So you'll get your full rebuttal. Let's hear from your friend on the other side, and we'll move on from there. Good morning. Robert Stone on behalf of the Kalamazoo County Road Commission. I think has been correctly pointed out and discussed in Mr. Tilley's time, the primary argument with this case is, both in interference and retaliation by plaintiffs, is that he had the right to be left alone, or that he was terminated for- It's the knowledge that the employer can call. Yes, and our position through all of that, and we cited a number of cases in our brief, that there is no right to be left alone while you're on FMLA leave, that it's perfectly acceptable. That's not, my struggle is, that's not the side of your opponent. Your opponent's position is that they can call, I understand that, but they cannot interfere with my FMLA leave. And it is the letter that says, you didn't call back when I called you, or you didn't respond, or however the particular language is, in the letter of discharge, which seems to me to create a dispute of material fact that has to be determined by a jury. Well, I think if you look, the cases that we cited note that in virtually all of those cases, the employee failed to comply with some requirement that was sandwiched on top of the FMLA requirement. So the call in daily if you leave your house, and some of those things. And in those cases, they were discharged for not complying with that requirement. And the ruling in those cases is, that obligation to communicate or engage in, as I think some court called it, a professional courtesy, with these de minimis types of interaction with the employer during FMLA, is so minimal that it does not interfere, and it is a legitimate basis. It's not protected activity, so it doesn't. Yeah, I'm struggling with how you draw that from the cases you cite, because you cite Allen. But Allen stands for the proposition that relates to whether you are having additional call-in requirements, for example, because of the employer's sick leave policy. And I think we've said in Cabin v. Hondo that the FMLA does not permit an employer to limit FMLA rights by denying them whenever the employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA. The employer can have its own policy about calling in for sick leave, but it can't punish FMLA leave, which was what we had here, for failing to comply with a different procedural requirement. So I don't see how Allen helps your case. Well, I think the cases show that there are certain things that can be required during a leave, and failure by the employee to comply with those requirements is a proper grounds for discipline or discharge, and it does not interfere with their FMLA rights if it's a minimal sort of, I think one of the phrases was, wrap up a completed project, or some of those kinds of things. So I think this is analogous to those cases in that there are certain activities an employer can require, such as where's the pager, call in if you're going to be leaving your house while you're on your FMLA, or attendance, additional attendance requirements. But the problem is, I think that comes in a different case. That comes in the case of applying fair call-in procedures under sick leave, and FMLA, as the cabin versus Honda case says, is that you may not impose those on someone who is only on FMLA leave. So it seems to me where we are is we are at a dispute of material fact. Well, I guess I would go back to the fundamental premise is that he was not discharged because of the third assignment issue. Yeah, and your problem is that's in your discharge letter. Well, it says, it recites the facts. He was given three assignments. He was given a five-day suspension for failing to complete those. And he was given extensions to finish those three assignments under threat of this is your last chance. If you don't do this, you're going to be fired. And he failed to complete the first assignment on the 28th, which was a Thursday. Your friend on the other side says that's not accurate. Well, it is accurate because they have made a big issue of the idea that he turned in something. And I think that's been correctly pointed out. It's not that he didn't turn something in. It's that he didn't turn in the corrected document that had the offense matched with the source of the offense. There was a batter disconnect. And there was a myosha, or leaving the key was a myosha. And he cited an insurance pool regulation. But it was tied to the myosha offense. So that grievance or that reprimand was never corrected. Isn't that argument problematic for you on your own argument? Because in your termination letter, you said you didn't respond to our calls. It violates our procedures under this part of the employee manual. So you want him to do that in his reconstruction of the reprimands. Well, you've done it in your reprimand and tied it directly to a violation of the employee handbook. So why isn't that a basis, or a portion of the basis, of your decision to terminate him? Well, I guess our position would be that it was not, and there's record testimony by Travis Bartholomew, his supervisor who terminated him, that the pager issue was not a part of the basis for the discharge. I'm just struggling with that. Does he get to call into question his own document that he has already cited and provided to this employee for the basis? I don't think you get to change your position by deposition testimony when you already have documentary evidence that takes a position. Well, I think I answer it on two levels. Again, I don't think that the letter really says that that was the reason for the termination. It talks about the assignments. This came in the fifth page and a couple of paragraphs or two of the background. But you dispute that it cited the manual and said this violates the manual. But I guess our position is that even if there had been no assignment, if we terminated him for not communicating with us about a pager, that would be grounds for termination that would not be protected by the FMLA, even if that's true. We don't believe that that was not one of the reasons. It's in the record. It was not one of the reasons for the termination and that that information in the letter is purely background information at the tail end of, I think, a five-page termination letter. But your position would be if you call somebody because you can't find something and they're in the hospital or coming back from a heart attack and on FMLA leave, they need to come into the office and assist you in finding the requested information. He's told them, here's where I left it. I'm struggling. Your opposing counsel would say, there's only one thing left. You come in and you help us find it. And that would seem to me to be the very essence of interfering with an FMLA leave. I don't think anybody suggested that he needed to come in. I think the issue was whether or not he communicated with his supervisor about where the pager was. And what I'm saying is a failure to do that is not protected activity under the cases we cited because it's a de minimis sort of professional courtesy as those cases talk about. I mean, you can explain where the facts apply or don't apply. But I mean, it's true. It's everyone agrees the employer can communicate with the employee about where something is, what's happened to this project. But if they don't respond on the day they're having open heart surgery, you agree you can't do anything. You can't punish them for that, right? That's ridiculous. Well, I don't think anybody's limiting it to the day. I mean, he went to the hospital. He was dismissed the second. I'm asking you to respond to Judge Stranch's question. Judge Stranch is making the point. He was in the hospital. So what was reasonable here in terms of the employer's expectation when it comes to returning his phone call? I think there's no claim that he was supposed to respond that very day. I think the claim, I mean, he never did. He basically went dark in terms of communication with the employer as far as the pager. When was the pager request made? What date was that? Well, I think there was a request made through the wife on the day he went to the hospital. But there was a follow-up, I think, the next day. When he calls in on August 8th, I take it no one asks him about that, or he doesn't volunteer any information on that? He didn't. His wife was doing most of the communication. I thought he called in one day. Maybe I'm wrong about that. I don't think he ever talked directly with Mr. Bartholomew. His wife came in to get paperwork. Yeah, don't the telephone records show? They're messages. They're not communications. I mean, they're not live communications with the supervisor. Well, who's, you know, you tell him to call and he calls in and the guy's not there to answer. Does that still make it incumbent upon this man to keep on calling back until he gets Bartholomew? I mean, I don't understand that. He didn't leave a message, though. He didn't say, I don't know where the pager is, sorry. Or what was the message he left? Did he say, you called me? I think he just called in on attendance line and said he would not be in until he goes to the doctor on the 8th, I think it was. But he didn't at that point say, I don't know where the pager is. No, I don't think there was any communication with Mr. Bartholomew about the pager. At some point, didn't he say he had left the pager in the truck? At some point, I think they got that message, but it was sometime later. They never did find the pager. It's not my understanding. So how should we think about this case? Do you think it's a McDonnell-Douglas case? Do you think it's a direct evidence case? What are we supposed to do with this? Well, I don't think the communications issue is direct evidence of an FMLI violation. I think the court was correct in using McDonnell-Douglas. And I don't think there was prima facie evidence of causation. I know the courts have said that timing, temporal proximity can be evidence of causation. But just as those cases say that longer temporal proximity can be enhanced by other factors, it's our position that a closer temporal proximity can mitigate that and eliminate the inference. And I think if you look at the facts of this case, and the cases say you look at the circumstances, that the timing was dictated by the deadline set in the five-day suspension. So there's nothing to be inferred with regard to it. And that was before the FMLI even was an issue. So there's nothing to be inferred where that mitigates any inference of the timing in this situation to eliminate the presumption of causation or the inference of causation. Our case law generally says you may bring in other factors or you need other evidence if there is a long period, a long causation time frame. But where there is a very short period, then we can say that that short period itself is evidence of causality. I don't see that the very short periods are the kind of thing that your argument is that it means we get to add other explanations. But I don't see that in the case law. Four days is four days. Well, I think from our perspective, the timing, it goes both ways. It can mitigate or it can enhance. And our position is it mitigates the timing in this case. But Judge Bell did go on to say, even assuming there is a prima facie case, he still did not offer evidence of pretext. And we go through in our brief about the various things in the good faith. I think one of the things that's critically important here is that with regard to whether or not the third day was considered, Mr. Piper specifically asked Travis Bartholomew in the one of the reasons why you terminated Mr. Tilley was that he didn't submit the job description and winter maintenance documents to you before the end of the deadline. Answer, no. So you're saying it's not the reason for termination. Answer, it's not the reason. Question, is it one of the reasons for termination? Answer, no. And he goes on to say that by the 28th and 29th, which is Thursday and Friday, it was over. The reprimand letter and the termination letter said if there are any further violations or performance issues, you will be terminated. And on the 28th, there was an additional violation. And the 29th, there was an additional violation. So as Judge Sutton pointed out early on, we don't think the third one even comes into play. We don't think that the pager comes into play. He was terminated because of those first two, because he had, at that point, had any violation, a violation of his work rules or his performance issues. And we think that is a legitimate, non-discriminatory reason for the termination. There's no evidence of pretext. It's clear that it's in good faith. They have not filed a reply brief. So there's no argument that there's any challenge to the good faith. of the decision maker. So we think that the decision of the lower court should be affirmed. Okay. Thank you. Thank you. A couple more points here. I'd like to point out the case of Asmo versus Keene, 471 F3rd 588 at page 596, where the court stated, Asmo need not show that all of the factors articulated by Keene are false, but rather only that some of the factors are false and a mere pretext for discrimination. So even though, as I said in response to Judge Sutton's question, I think I have indicated that all of the reasons they cited were pretexts. If I can just show some of them, when the reasons advance are a collective reason, which is what we have in this case, that is enough to get the case to a jury. Again, I want to emphasize that there was communication about the pager. Again, page ID number 588, which is the termination letter, says you were on the duty rotation the week of August 1 and shared the pager was located in your KCRC truck and it was not found. What else does he have to do? The only other thing that he could possibly have done to help them would be actually to go in and look for the pager, which would be improper. There was additional communication. Judge Sutton pointed out, wasn't there a call on August 8? Yes, there was. I mentioned that earlier. He left a message, Travis, this is Terry. I'm still sick. I won't be in, blah, blah, blah, blah, blah. If they wanted to communicate with him, why didn't they call him back? He called. If there's a continuing issue with the pager. Why didn't he leave a message where the pager was? Well, he had already given the information that it was in the truck. How was he supposed to know where else it might be? The only way he could do it. Again, I may have repeated myself, but he couldn't. Did he ever say he was too sick to answer the calls and respond? Well, certainly he was when he was called in the hospital initially. Some people in the hospital are not too sick. Yeah, I understand, but he was having, you know, this is all, cases are all fact specific. He was having heart attack symptoms, panic attack, things like that. He was certainly not in condition to respond to a call at that time. That's why his wife was communicating regarding the FMLA and things of that nature. He did call. Did she call the employer and say he's too sick to answer the calls? He'll respond as quick as he feels better. Yeah, she submitted medical paperwork that served as a basis for the FMLA, and the FMLA was granted. But again, you know, this seems to me to be a very slippery slope to determining people for this, you know, it's a trivial, I don't want to call anything trivial, but an ad hoc request for the pager that didn't come up before he left. And you make a call about a pager, which he supplied information about, that it's in the truck, and you're going to say that's a justification for terminating him under the FMLA? That would be terminating him for exercise of his leave under the FMLA. He's done what he can to respond to the inquiry. He can, of course, when he gets back to work, he can look for the pager. But that is clearly a violation. Do you want us to think of this as a direct evidence case or a McDonnell Douglas indirect evidence case? Or either one? I would say it's a direct evidence case, and it shouldn't go beyond that, again. But if you do go beyond that, I have shown pretext, as I argued, ASMO, you don't have to rebut every reason. I think I have rebutted every reason, though. But under ASMO, you know, and we have the information right there in the termination document, and Judge Bell said that the defendant cited the communication failure as a basis for the termination. So he made that factual finding, but it was in the termination letter. So any reasonable person would read that and figure that was one of the reasons why he was terminated. So yes, this case should be reversed. Okay, all right. Get to the final point. Thank you for your helpful briefs and oral arguments. We appreciate it. The case will be submitted, and the clerk may recess court. Thank you for your respectful questioning.